# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| WENDY MULYCA,<br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | Case No. 1:18-cv-222<br>Dlott, J.<br>Litkovitz, M.J.<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Wendy Mulyca brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 6) and the Commissioner's response in opposition (Doc. 12).

## I. Procedural Background

Plaintiff protectively filed her application for SSI in May 2014, alleging disability since June 1, 2013 due to knee pain, a torn ACL in the right knee, arthritis in the left knee, a back injury, colitis, and stress. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded a hearing before administrative law judge (ALJ) Peter J. Boylan on January 9, 2017. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On February 13, 2017, the ALJ issued a decision denying plaintiff's application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since May 23, 2014, the application date (20 CFR 416.971 *et seq*).
>
> 2. The [plaintiff] has the following severe impairments: Major joint dysfunction; reconstructive surgery of a weight-bearing joint; borderline intellectual functioning; learning disorder; affective disorder; and abnormal curvature of the spine (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following restrictions: She can frequently push/pull with the left lower extremity. She can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop and crouch but can never kneel or crawl. She can perform simple, routine tasks. She cannot perform at a production-rate pace. She can make simple, work-related decisions. She can handle occasional changes in a routine work setting.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] …1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

3

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since May 23, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 27-37).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[1]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of light, unskilled occupations such as routing clerk (80,000 jobs nationally); marking clerk (290,000 jobs nationally); and inspector (100,000 jobs nationally). (Tr. 37, 65-66).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Medical Evidence**

### 1. Dr. Taylor Groneck, Psy.D. – consultative examining psychologist

Taylor Groneck, Psy.D., evaluated plaintiff for disability purposes in August 2014. (Tr. 306-13). When asked why she was seeking disability, plaintiff listed physical complaints. (Tr. 306-07). Plaintiff reported she attended school to the tenth grade and left when she became pregnant. She has attempted to obtain her GED on two occasions but has been unsuccessful. She was enrolled in special education classes while in school and obtained C grades. She stated, "I had a hard time comprehending when people talked to me." She noted a history of grade failure but could not recall which grades. (Tr. 307). Dr. Groneck found plaintiff was cooperative and rapport was easily established. She appeared her stated age and was casually dressed and adequately groomed. Plaintiff's motivation and participation appeared adequate. Dr. Groneck noted plaintiff's speech was slowed, and she spoke in a monotone voice. She had a

5

slight speech impediment but was 100% understandable. She required simplification of questions to ensure understanding. Plaintiff's thoughts were tangential, and she often required reorienting to topic. Dr. Groneck reported plaintiff's phraseology, grammatical structure, and vocabulary suggested that she functioned in the borderline range of intelligence. (Tr. 308). Plaintiff's mood appeared depressed with full affect; her eye contact was variable; and she appeared fatigued. Plaintiff's psychomotor speed was slow. She exhibited no motoric or autonomic signs of anxiety. Her mental content was intact. Plaintiff was oriented to person, place, and time, and her recent and remote recall appeared adequate. Short term and working memory abilities were limited. She could recall four digits forward and three digits backward. She seemed easily distracted and conversed with the testing assistant during testing. Plaintiff could not determine similarities between wish and expect or acceptance and denial. (Tr. 309).

Intelligence testing resulted in a full-scale IQ of 72, a working memory index of 69, and a processing speed index of 62. (Tr. 309-10). Her reading abilities fell at the sixth-grade level. Her spelling abilities were at the fourth-grade level. (Tr. 310).

Dr. Groneck assessed Major Depressive Disorder, Recurrent, Mild; borderline intellectual functioning; and specific learning disorder with impairment in written expression. (Tr. 312).

Dr. Groneck also assessed plaintiff's functioning from a mental standpoint. In terms of plaintiff's abilities and limitations in understanding, remembering, and carrying out instructions, Dr. Groneck opined that plaintiff's intellectual abilities were consistent with functioning in the borderline range of intelligence. During the evaluation, plaintiff accurately followed all simple instructions given, but she had some difficulty understanding more complex questions. Dr. Groneck opined that plaintiff would likely benefit from receiving verbal versus written

instructions, and she may require repetition of instructions to assist her learning and memory for such. (Tr. 312).

Dr. Groneck also assessed plaintiff's abilities and limitations in maintaining attention, concentration, persistence, and pace to perform simple and multi-step tasks. Dr. Groneck reported that plaintiff's ability to focus and concentrate varied during the interview. She gave good effort but seemed distracted, and her work pace was slowed. She would likely display similar behaviors in the workplace and have difficulty focusing over lengthened periods of time. She was likely to display a work pace slower than her peers. (Tr. 312).

With regard to plaintiff's abilities and limitations in responding appropriately to work pressures in a work setting, Dr. Groneck stated that plaintiff may struggle to adjust to major changes in working conditions but appeared capable of managing most minor workplace pressures. She would likely require excessive support to adjust to a new or changed task due to slow learning. She would likely feel distressed by novel or demanding tasks. (Tr. 312-13).

### 2. State Agency Psychologists

In September 2014 and January 2015, state agency psychologists, Robyn Hoffman, Ph.D., and Mary K. Hill, Ph.D., reviewed plaintiff's medical records and concluded that plaintiff could understand, remember, and follow one-to-three step tasks but may need extra time and repetition for new learning. They also noted that plaintiff could work with no more than moderate pace or production quotas. In addition, Drs. Hoffman and Hill determined that plaintiff could work in a static environment with gradual explanation and introduction of change. (Tr. 78-80, 94-96).

They found plaintiff partially credible, noting she did not allege impairment of psychiatric abilities. The record showed plaintiff maintained hygiene on her own, prepared meals daily, and performed a wide range of household chores. She left her home daily and independently, and she was able to drive, shop, and handle money. She socialized with friends and family, attended church, and went fishing. (Tr. 76, 92).

### E. Specific Errors

Plaintiff alleges the following assignments of error: (1) the ALJ erred in determining that her impairments did not meet or medically equal Listing 12.05B; and (2) the ALJ erred in failing to consider significant vocational expert testimony, including the use of verbal instructions, repetition of instructions, off-task behaviors, and absences. (Doc. 6).

#### 1. Whether the ALJ's finding that plaintiff's impairments did not meet or medically equal Listings 12.05B is supported by substantial evidence.

Plaintiff argues the ALJ erred in finding that her mental impairments did not meet Listing 12.05B. Plaintiff contends that even though ALJ Boylan properly found her intelligence level to satisfy section 1 of Listing 12.05B, the record in this case establishes that her mental health impairments cause significant deficits in adaptive functioning as required by the listing. Plaintiff alleges she has a marked limitation in understanding, remembering, and applying information and a marked limitation in her ability to concentrate and maintain persistence or pace. (Doc. 6 at 4-5).

Part B of Listing 12.05 provides that an intellectual disorder meets the listing requirements when all three of the following criteria are satisfied:

B. Satisfied by 1, 2, and 3 (see 12.00H):

8

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or
    b. Interact with others (see 12.00E2); or
    c. Concentrate, persist, or maintain pace (see 12.00E3); or
    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404 Subpt. P, App. 1 § 12.05B.

The ALJ determined that plaintiff did not meet all of the requirements of Listing 12.05B because she did not exhibit sufficiently severe limitations in adaptive functioning. The ALJ stated:

> Regarding the claimant's test scores, results from psychometric testing administered to the claimant measured her full-scale IQ at 72, a working memory index of 69 and a processing speed index at 62. Although these scores satisfy one requirement of the aforementioned conjunctive criteria, as demonstrated above, the claimant does not face sufficiently significant limitations in the "paragraph B" criteria to meet the second criteria regarding deficits in adaptive functioning.

(Tr. 32, citations to the record omitted). The ALJ determined that plaintiff has only "moderate" limitations in her ability to understand, remember, or apply information and "moderate" limitations in her ability to concentrate, persist, or maintain pace. (Tr. 30). A "moderate limitation" is defined as a "fair" ability to function independently, appropriately, effectively, and

9

on a sustained basis. *See* Listing 12.00F2(c). A "marked" limitation, required for listing level severity, is defined as a "seriously limited" ability to function independently, appropriately, effectively, and on a sustained basis. *See* Listing 12.00F2(d).

Plaintiff alleges she has "marked" limitations in two areas of adaptive functioning and the ALJ erred by finding otherwise. In support of her argument that she is markedly impaired in her ability to understand, remember, or apply information, plaintiff points to her testimony that she struggles to read The Bible and perform spelling; she is unable to remember the names of people she has just met; and she struggles to remember what she has read. Plaintiff also cites to the results of the consultative examination finding that she reads at the sixth-grade level; she would benefit from verbal instead of written instructions; and she would require repetition of instructions to assist in her learning and memory. (Tr. 312). In support of her argument that she is markedly impaired in her ability to concentrate, persist, or maintain pace, plaintiff cites to her testimony that she struggled to concentrate in school; she could only focus for about 20 minutes at a time; and she had difficulty focusing on tasks when she worked. Plaintiff also cites to the consultative examination findings that she seemed distracted throughout the exam; her distraction caused her work pace to slow on examination; and she would likely display similar behaviors in the workplace, causing her to work at a slower pace than her peers. (Tr. 312). The consultative examiner also found that plaintiff would require excessive support in the work environment, particularly to adjust to a new or changed task. (Tr. 313). Plaintiff also cites to evidence that she alleges shows these deficits began prior to age 20: she was in special education classes and she read at the sixth-grade level. (Tr. 30, 312).

10

It is well-established that a claimant must show that she satisfies all the individual requirements of a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986) (at Step 3, a claimant's impairment must meet every element of a listing before the Commissioner may conclude that she is disabled). An impairment that satisfies only some of the elements of a particular Listing, "no matter how severely, does not qualify." *Zebley,* 493 U.S. at 530. Here, there is substantial evidence supporting the ALJ's decision that plaintiff's intellectual functioning did not meet the requisite criteria of Listing 12.05B.

The ALJ reasonably determined that plaintiff's level of impairment in the two relevant areas challenged by plaintiff were only moderately, and not markedly, limited. The ALJ acknowledged that plaintiff had some limitations in understanding, remembering, and applying information, but she demonstrated at least limited literacy during the consultative examination with Dr. Groneck. (Tr. 30). She tested in the borderline range of intelligence and additional testing measured her academic skills in the fourth to eighth-grade level. (Tr. 29, 311). Plaintiff was able to accurately follow all simple instructions during the examination, including answering questions posed by the examiner. She had "some difficulty" understanding more complex questions. (Tr. 312). The ALJ also reasonably found that plaintiff was only moderately limited in her ability to concentrate, persist and maintain pace. (Tr. 30). The ALJ acknowledged plaintiff's testimony that she struggled to concentrate in school and estimated she could maintain focus for only about 20 minutes. (Tr. 30). However, the ALJ noted that plaintiff did not exhibit those deficits during the hearing, and she characterized her concentration during the proceedings as "good." (Tr. 30, 57). The ALJ further noted that plaintiff reported difficulty focusing on

tasks when she was working because of physical pain and not due to a cognitive or other mental impairment. (Tr. 30, 308).

The opinions of the state agency physicians further support the ALJ's conclusion. The only medical evidence in the record assessing plaintiff's cognitive functioning is from Dr. Groneck's consultative examination. Based on the information from this examination, both state agency physicians, Drs. Hoffman and Hill, opined that plaintiff did not meet the diagnostic criteria of Listing 12.05 for intellectual disability. (Tr. 74, 90). Dr. Hoffman noted that plaintiff performed a wide range of household chores and left her home daily and independently. (Tr. 76). Plaintiff was able to drive, shop, and handle money. (Tr. 76). While plaintiff was moderately limited in her ability to understand and remember detailed instructions, she was not significantly limited in her ability to understand and remember very short and simple instructions. (Tr. 78). Dr. Hoffman also rated plaintiff's difficulties in maintaining concentration, persistence, or pace as "moderate." (Tr. 75). Dr. Hoffman opined that plaintiff was not significantly limited in her ability to carry out very short and simple instructions and to sustain an ordinary routine without special supervision. She was moderately limited in her ability to carry out detailed instructions and to maintain attention and concentration for extended periods of time. (Tr. 79). Dr. Hoffman opined that plaintiff was limited to simple, routine tasks and would benefit from tasks that do not pressure her to adhere to strict production demands. (Tr. 79).

On reconsideration, Dr. Hill endorsed Dr. Hoffman's assessment that plaintiff was at most moderately limited in her ability to understand, remember, and carry out detailed instructions and to maintain concentration and attention for extended periods of time. (Tr. 94-

95). Dr. Hill likewise found that plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions, to carry out very short and simple instructions, and to sustain an ordinary routine without special supervision. (*Id.*).

The ALJ reasonably relied on Dr. Groneck's assessment of plaintiff's cognitive functioning in determining that plaintiff was moderately, and not markedly, limited in the areas of adaptive functioning for Listing 12.05B. The ALJ's decision is substantially supported by the opinions of the state agency physicians, which is the only other medical evidence to address plaintiff's limitations in adaptive functioning. Plaintiff has not directed the Court to any additional evidence that would undermine the ALJ's findings. The Court determines that the ALJ's decision finding plaintiff does not meet or equal Listing 12.05 is supported by substantial evidence. Plaintiff's first assignment of error should be overruled.

## 2. Whether the ALJ erred in failing to properly consider the VE testimony.

The VE testified that a hypothetical individual with plaintiff's age, education, work experience, and RFC would be able to perform the jobs of routing clerk, marking clerk, and inspector. The VE also testified that these jobs exist in significant numbers in the regional and national economies. (Tr. 65-66).

Plaintiff argues that the ALJ erred when he failed to consider the VE's testimony regarding off-task behavior, absences, verbal instructions, and repetition of instructions. (Doc. 6 at 6-8). During the administrative hearing, the VE testified that a hypothetical individual who is off-task twenty percent of the day or absent two days per month could not perform the jobs identified by the VE. (Tr. 66). The VE also testified that a hypothetical person who required verbal instructions in addition to the restrictions in the hypothetical question that incorporated

13

plaintiff's RFC would not be able to perform the occupation of routing clerk but could perform the occupations of marking clerk and inspector because they do not require reading. (Tr. 67). The VE additionally testified that it would be work preclusive over a period of time if a hypothetical person required frequent repetition of instructions. (*Id.*).

The ALJ did not err in evaluating the VE's testimony. While the VE testified that off-task behavior of twenty percent would be work preclusive, plaintiff has failed to point to any evidence substantiating that she would be off-task twenty percent of the day. Plaintiff alleges her severe impairments cause her to work at a slower pace, she experiences difficulty concentrating, and she experiences difficulty comprehending instructions. However, plaintiff has failed to point to any record evidence or authority establishing these behaviors translate into being off-task twenty percent of the time. The ALJ may not rely on a hypothetical question to the VE that does not accurately portray the plaintiff's physical and mental impairments. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Similarly, plaintiff argues the ALJ failed to consider the VE's testimony that a hypothetical person who was absent two days per month would eliminate the jobs previously identified by the VE. However, plaintiff has failed to cite to any evidence showing that plaintiff was likely to experience two absences per month as a result of her impairments. Without any such evidence supporting the likely number of absences from work, the ALJ did not err by failing to adopt the VE's testimony in this respect.

Plaintiff further contends that the ALJ erred by failing to consider the VE's testimony on the need for verbal instead of written instructions on plaintiff's vocational abilities. In response to a hypothetical question posed by plaintiff's counsel on the effect of verbal, as opposed to

14

written, instructions being required, the VE testified that one of the three jobs cited – the routing clerk position – would be eliminated. (Tr. 67). Even assuming the ALJ should have adopted this limitation and did not, any error would be harmless. The two remaining jobs, marking clerk and inspector, exist in significant numbers in the national and regional economies such that plaintiff would not be considered disabled.

Finally, plaintiff alleges the ALJ erred by not considering plaintiff's need for repetition of instructions on her ability to perform the jobs identified by the VE. The VE was asked, "And what would typically be the tolerance for repetition of instructions – if the person did need repetitions of instructions during the day even for the simple tasks?" (Tr. 67). The VE responded, "If you had to have frequent repetitive instructions, I think that would become work preclusive over a period of time." (Tr. 67).

There is no evidence that plaintiff would require "frequent" repetition of instructions to perform the work identified by the VE. Under Social Security Ruling 83-10, "frequent" is defined as occurring from one-third to two-thirds of the time. SSR 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983).[2] Dr. Groneck opined that plaintiff "would likely benefit from receiving verbal, versus written instructions" and "[s]he *may* require repetition of instructions to assist her learning and memory for such." (Tr. 312) (emphasis added). There is no evidence that plaintiff *will* require repetition of instructions, and even if she did, plaintiff has failed to cite any evidence to

---

[2] Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations that are "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) (citations omitted)).

support the proposition that plaintiff would need instructions repeated one-third to two-thirds of the work day.

The hypothetical question to the VE upon which the ALJ relied incorporated the limitations contained in the ALJ's final RFC formulation and accurately portrayed plaintiff's abilities and limitations. *See Varley*, 820 F.2d at 779. There is no medical evidence supporting greater limitations than those reflected in the prescribed RFC formulation. Accordingly, the ALJ's reliance on the VE's testimony that work exists in the regional and national economies that plaintiff can perform is supported by substantial evidence. The ALJ did not err in failing to adopt an RFC or hypothetical question that further restricted plaintiff. Plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 8/8/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

WENDY MULYCA,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-222
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).